**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


UNITED STATES OF AMERICA              :

            V                         :   **Criminal No. 0313 2:16CR00511-01**

MATTHEW MAFFEI                        :


**SENTENCING MEMORANDUM OF MATTHEW MAFFEI**

I.      **INTRODUCTION AND BRIEF PROCEDURAL HISTORY**

On December 15, 2016, a grand jury in the Eastern District of Pennsylvania returned a four

count indictment, charging the defendant, Matthew Maffei (hereinafter "Mr. Maffei"defendant"),

is charged by indictment in Count I – Manufacture of Child Pornography in violation of 18 U.S.C.

§ 2251(a); Count II - Transportation of Child Pornography in violation of 18 U.S.C. § 2252(a)(1);

Count III – Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2); and Count IV -

Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(b).  Additionally, Notice

of Forfeiture accompanied the indictment.

The facts upon which Mr. Maffei accepts responsibility are as follows:

The charges arise from the defendant's manufacturing, transportation and possession of

images of sexual abuse as well as other photographs of minor children taken from the internet.  At

no time has the defendant been accused of providing, sending or giving to any person or through

the internet, child pornography.

Initially, the defendant was charged by the Commonwealth of Pennsylvania in the County

of Delaware with possession of child pornography, as well as other related offenses.  These charges

were filed against him in August 26, 2016, in the Delaware County Court of Common Pleas.  At

the time of his arrest, the defendant took full responsibility and cooperated with the authorities. He provided all information necessary for his computer and cell phone, giving an immediate inculpatory statement to the police and providing them with any and all information required. Upon his incarceration at the Delaware County's Men's Prison, the defendant immediately entered into and completed the Sex Offenders' Program.  (Exhibit D-1).

In December, 2016, the defendant was charged with the above four counts and his case was moved to Federal Court. Upon his incarceration at the Federal Detention Center in Philadelphia, the defendant immediately commenced a treatment program for his sexual offender status.  This includes psychological and psychiatric treatment as well as group sessions.  He has been in that program for one year and has, according to the defendant, made great strides.

Currently, the defendant waits sentencing by this Honorable Court on or about January 16, 2018.

## II.    PERSONAL BACKGROUND

### A.    Family, Work and Travel History

Mr. Maffei was born on October 1974 in Aston, Pennsylvania.  He has a brother and sister, Shawn Maffei, age 46 and Melinda Johnson, age 43.  He also has a half sibling.  His name is Mark Courtney who is 53 years of age.  All live in Delaware County, Pennsylvania and are fully employed.  His father, Frank Maffei is deceased.  His mother, Elizabeth Maffei is 74 years of age. At the time of this incident, Mr. Maffei was residing at his mother's home.

Mr. Maffei has never been married and does not have any children.

Mr. Maffei reports that he was given all necessities to live as a child. However, his parents were separated when he was fourteen years of age.  His father never acted in any type of paternal fashion towards him. In fact, his father suffered from depression and ignored Mr. Maffei for his

entire life.

Mr. Maffei reports that between the ages of 9 and 11, he was sexually molested by a male cousin. It happened several times. Eventually, he reported the abuse to his mother and it never happened again. Mr. Maffei had relationships with woman. However, he always found it difficult to have a long-term, romantic relationship with women. Mr. Maffei does report that he saw a counselor when he was the age of 12 or 13. This was due to his feelings of depression. He believes that his father also suffered from severe bouts of depression. Mr. Maffei's bouts of depression came soon after the sexual assaults upon him by his male cousin. These events occurred simultaneously as he was going through puberty and he was on prescribed medication for depression. His psychiatric care lasted one year

Mr. Maffei never received any type of mental health treatment after this initial treatment at the age of 12 years of age. It was not until his treatment program at Delaware County Men's Prison and the follow-up care last year at the Federal Detention Center that he has received any type of psychological or psychiatric care. He is presently medicated for depression and under the care of a psychiatrist at the Federal Detention Center.

Mr. Maffei was a frequent user of marijuana from the age of 17 until the date of his incarceration. When this incident occurred, he was visiting his high school friends (the Zerby's, who are the parents of the child) for approximately one week. He and the Zerby's smoked marijuana the entire time he was there. He reports that he has been using marijuana on a daily basis prior to his arrest. Additionally, Mr. Maffei reports that, in his past, he has used Cocaine on a frequent basis and, occasionally, used LSD in his early twenties.

Mr. Maffei has never participated in an in-patient or out-patient drug treatment program nor has he received any treatment for his pedophilia issues until his incarceration.

As an adult, Mr. Maffei has always been gainfully employed.  He has worked numerous jobs including computer hardware, truck driver, car dealership parts department, picture framer, plumbing supply warehouse worker and working as a Costco employee in the auto parts division.

Mr. Maffei maintained relationships with his friends from high school and other friends from young adulthood.  He has always been a friendly, affable man. The Zerby's, too, were high school friends.  Subsequent to his arrest in this matter, Mr. Maffei lost touch with all of his friends from high school as well as friends from his adulthood.

Mr. Maffei attended and completed the two-year associates degree program at Community college and Penn State University at the Brandywine campus. He accumulated significant school debt in the last few years.

The defendant was forced to live in his mother's home due to his financial problems.


B.    **CHARACTER LETTERS**

Attached hereto and marked as Exhibit D2 are character reference lettesr from his older brother, Shawn Maffei and his former sister-in-law Kathleen Maffei.  This correspondence attests to Mr. Maffei's good character. Clearly, it was embarrassing for Mr. Maffei to explain his criminal behavior to his mother, siblings and lifelong friends.

In Shawn Maffei's character letter (D2-A) concerning his brother, he writes "always known Matt to be a gentle and caring human being not only to other people but animals as well".  Shawn also advised that "[he has] never seen or heard Matt take an aggressive or threatening stance towards anyone".  Shawn recollects that Mr. Maffei tried to work in the computer trade but was unsuccessful.  He combated a substance abuse problem for "quite a while".

Most importantly, Shawn writes that they were totally shocked by these criminal charges.

He has been with Mr. Maffei all of his life and Mr. Maffei has never had problems with other children. "Never a complaint or questionable incident. No one else coming forth after the media story about his arrest."

Shawn Maffei believes that in the last several years, his father's death, work loss injury at Costco, mounting school debt and dwindling finances "[and] Matt returned to using drugs." Shawn Maffei believes these past several years have been very difficult for Mr. Maffei.

Shawn Maffei confirms that Mr. Maffei has been a law-abiding citizens for 42 years, knowing he has never committed a crime.

Kathleen Maffei is the sister-in-law of Mr. Maffei. She writes that she knows him well. They lived together approximately six years. She describes him as a "sensitive, big hearted, generous young man." She also opined that he was a "warm, caring, honest person." Giving various examples of his kindness and support of her and her family throughout her character letter.

She did worry that he was "struggling with his life's direction and meaning." Her final plea to the court, ***"Whatever demons he's struggling with, there is a kind, empathetic human being inside who I believe would not waste a chance to fix his problems and work towards redemption. (D2-B)***

## C.    PSYCHIATRIC EVALUATION

Dr. Stephen Mechanick, M.D. met with and performed a psychiatric evaluation of Mr. Maffei after his review of all discoverable documents. The following is an excerpt of his Report, which is attached hereto and marked (exhibit D-3):

> ***"It is my opinion that the following factors are relevant to Mr. Maffei's mitigation and sentencing:***

*1. Mr. Maffei's cousin sexually abused him when Mr. Maffei was between nine and eleven years old. Experiences of childhood sexual abuse may create an association in the minds of the victims between children and sexuality, and Mr. Maffei's experiences*

*2. Mr. Maffei's father, brother, and sister have had problems with depression. Mr. Maffei had a strong genetic risk of developing depression as a result of his family history.*

*3. Mr. Maffei had a history of depression dating back approximately to age 13, when he had counseling for eight to twelve months. Mr. Maffei continued to have a low-level, chronic depression throughout his adolescence and adulthood. He did not receive treatment for his depression until his current incarceration. Mr. Maffei's chronic depression and low self-esteem contributed to his interpersonal problems. Mr. Maffei coped with these problems in part by withdrawing, becoming isolated, and using pornography for sexual gratification.*

*4. Mr. Maffei was exposed to his father's depression during his childhood. He reports that his father was very detached and slept a lot. Mr. Maffei's parents separated when he was 13 or 14 years old, and he saw his father infrequently after his parents separated. Mr. Maffei's exposure to his father's depression, and the loss of his relationship with his father during his childhood, likely contributed to his persistent depression, low self-esteem, isolation, and dysfunctional use of pornography.*

*5. Mr. Maffei smoked marijuana beginning at age 18, including periods when he smoked it up to twice a day. Mr. Maffei's marijuana use and intoxication with marijuana impaired his judgment, impaired his impulse control, and contributed to his use of pornography, as well as his inappropriate sexual behavior with the victim in the case that occurred in Delaware.*

*6. Mr. Maffei's viewing of child pornography began after he was viewing other pornography. Like many other sexual offenders, Mr. Maffei progressively searched for more stimulating pornographic materials."* **(Exhibit 3)**

III.    **SENTENCING PROCEDURE**

Sentencing courts now engage in a three step process in sentencing. U.S. v. Gunter, 462 F.3d 237 (3d Cir. 2006)

1.Courts continue to calculate a defendant's advisory sentencing guidelines sentence range as they did before *Booker* to determine an initial benchmark.

2.In doing so, they must formally rule on the motions on both parties and state on the record whether they are granting a departure and how that departure affects the guidelines calculation. U.S. v. Wise, F.3d 207, 216.

3.Finally, they are required to exercise their discretion by considering the relevant [18 U.S.C.] § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated under the guidelines. Gunter at 247. U.S. v. Fumo, 2011 U.S. App. Lexis 17531, *44 (2011) (citations omitted).

IV.   **SUBSTANTIAL DISCRETION AND DEVIATION FROM THE GUIDELINES**

In United States v. Booker, the Supreme Court stated that sentencing courts must treat the Sentencing Guidelines as just one of a number of sentencing factors. 543 U.S. 220, 246-47 (2005). This approach makes the Guidelines system advisory "while maintaining a strong connection between the sentence imposed and the offender's real conduct – a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." *Id.* at 246. Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to not only consider Guideline ranges, *see* 18 U.S.C.A. § 3553(a)(4) (Supp. 2004), but also requires the court tailor the sentence in light of other statutory concerns. *See* 18 U.S.C.A. §3553(a).

The *"parsimony principle" is the directive of Congress that the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the four identified*

*purposes of sentencing: just punishment, deterrence, protection of the public, and rehabili-tation.*" Dean v. United States,  (U.S.Sct. April 3, 2017) (emphasis added); . 18 U.S.C. § 3553(a); Pepper v. U.S. 131 S.Ct. 1229, 1242 (2011)  *("sentencing judge's overarching duty under § 3553(a) [is to] to impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2)*"; Kimbrough v. U.S., 552 U.S. at 111 (district court "may determine...that in the particular case a within Guidelines sentence is 'greater than necessary" to serve the objectives of sentencing"; here district court's below guideline sentence in drug case not unreasonable because "it appropriately framed its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary to accomplish the goals" of sentencing"); U.S. v. Carty 520 F.3d 984 (9th Cir. 2008) (*en banc*) (this principle is the "overarching statutory charge); U.S. v. Husein  478 F.3d 318 (6th Cir. 2007) ("The plain import of *Booker* is that a 1-day, below-the-Guidelines sentence, no less than a 7,300-day, above-the-Guidelines sentence, is now a viable sentence for a district court to impose so long as it is authorized by statute and reasonable within the meaning of 18 U.S.C. § 3553(a)").

Further, in Pepper v. U.S 131 S.Ct. 1229, 1240 (2011), the Court emphasized the need for individualized sentencing, reiterating *"the principle that 'the punishment should fit the offender and not merely the crime."* (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)); see Miller v. Alabama, 132 S.Ct. 2455 (2012) ('punishment for crime should be graduated and proportioned to both the offender and the offense").


*See United States v. Sedore*, 512 F.3d 819 (6th Cir. 2008) (Merritt, C.J., dissenting) ("This case is one more example of the continuing problem, the problem of guidelineism, or 'guidelinitis,' the inability of most federal courts to break their habit of mechanically relying just on the

guidelines alone").

*"Sentencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a particular crime."* U.S. v. Harris, 679 F.3d 1179, 1183 (9th Cir. 2012).  Under *Pepper*, *Booker*, *Gall*, and *Kimbrough* "empowered district courts, not appellate courts . . . . [and have] breathe[d] life into the authority of district court judges to engage in individualized sentencing." U.S. v. Whitehead, 532 F.3d 991 (9th Cir. 2008); U.S. v. Vonner, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) ("The sentencing court must not be "so appalled by the offense that it loses sight of the offender" and "the record [must] reflect the required consideration of "the history and characteristics of the defendant," 18 U.S.C. § 3553(a) (1).

U.S. v. Carty 520 F.3d 984 (9th Cir. 2008) (*en banc*) ("Nor should the Guidelines factor be given more or less weight than any other. While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence."); U.S. v. Sachsenmaier  491 F.3d 680 (7th Cir. 2007) (post-*Rita*, 2007) ("The district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence."); U.S. v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007) ("A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence.  To do so would be to take a large step in the direction of returning to the pre-*Booker* regime."); U.S. v. McBride  434 F.3d 470  (6th Cir. 2006) ("while the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant."); U.S. v. Winters*, 416 F.3d 856, 860-61 (8th Cir.

2005) ( "[t]he Guidelines range is merely one factor," and any possible sentencing disparity resulting from an outside-Guidelines sentence must not be isolated "to the exclusion of all the other § 3553(a) factors");

U.S. v. Hanson  561 F.Supp.2d 1004 (E.D. Wisc. 2008) (in possession of child porn. case where guidelines 210-262 months, court imposes sentence of 72 months in part because "the guideline for this offense, which contains numerous and significant enhancements for factors that are present in many if not most cases, diverges significantly from the Sentencing Commission's typical, empirical approach, and produced a sentence greater than necessary to provide just punishment in this case"   *"Between 1994 and 2007 the mean sentence in  child pornography cases increased from 36 months to 110 months...this increase was not the result of the empirical approach often used by the Commission, designed to be an expert body on sentencing.  Rather, it was the result of arbitrary increases by Congress slipped into other bills, often with little or no debate."); U.S. v. Baird, 580 F.Supp.2d 889 (D. Neb.  2008) (granting substantially below guideline sentence in child-porn case in part because "the Guidelines for child exploitation offenses, like the drug-trafficking Guidelines, were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives.); U.S. v. Jaber, 362 F.Supp.2d 365 (D. Mass. 2005) ("the Commission simply took the average national sentences for a given offense, and then increased them, without explanation, much less scientific studies")*

Remember also that *"[i]f the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm."* U.S. v. Meyers, 353 F.Supp. 2d 1026, 1027 (S.D. Iowa 2005).

## V.   GROUNDS FOR A DOWNWARD VARIANCE- REASONS FOR A SENTENCE BELOW THE APPLICABLE GUIDELINE RANGE

In    U.S. v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the sentencing guidelines are **advisory only**, not mandatory.  The other factors set forth in 18 U.S.C. § 3553 (a) must also be considered in fashioning the appropriate sentence. These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. *Booker*, 125 S.Ct. at 764; see Gall v. U.S., 552 U.S. 38 (2007); Kimbrough v. U.S., 552 U.S. 85 (2007); *see* **Beckles v. U.S**., * 2017 WL 855781, at *7 (U.S.,2017) (" Although the Guidelines remain "the starting point and the initial benchmark" for sentencing, a sentencing court may no longer rely exclusively on the Guidelines range; rather, the court "must make an individualized assessment based on the facts presented" and the other statutory factors…The Guidelines thus continue to guide district courts in exercising their discretion by serving as "the framework for sentencing… but they "do not constrain th[at] discretion." ).

This court enjoys broad sentencing discretion after *Booker*, as the Guidelines are but one

of an array of factors considered under § 3553(a). *Kimbrough vs. U.S.*, 552 U.S. 85, 91 (2007). The court must make an individual assessment based upon the facts presented, *Gall v U.S.*, 552 U.S. 38, 50 (2007), and is encouraged to tailor the sentence in light of non-Guideline statutory concerns. This court's discretion is limited only by the parsimony provision of imposing a "sentence not greater than necessary" to accomplish Congressional sentencing goals. *Kimbrough*, 552 U.S. at 101. That is particularly true where, as here, the Commission's views rest on wholly unconvincing policy rationales not reflected in the sentencing statutes Congress enacted. *United States v. Grober*, 624 F.3d 592, 600-01 (3d Cir. 2010). The true rule is now back to "[p]unishment should fit the offender, not the crime." *Williams v. New York*, 337 U. S. 241, 247 (1949). The plain language of § 3661 makes clear that there is "[n]o limitation . . . on . . .background, character, and conduct" information, and it makes no distinction between an initial sentencing and a subsequent resentencing.

Mr. Maffei has a great opportunity for rehabilitation. His past nightmarish issues have finally been identified and are being addressed. With the help of these professionals, Mr. Maffei can rehabilitate himself and reduce to zero the risk of his reoffending. The following is an excerpt from Dr. Mechanick's opinion letter and report dated January 8, 2018, marked as Exhibit D-3.

> *"The following are positive factors for Mr. Maffei's potential for rehabilitation and for reducing his risk of reoffending:*
> *1. Mr. Maffei did not have a history of criminal behavior, arrests, or convictions prior to the current charges. The absence of such history reduces his risk of reoffending.*
> *2. Mr. Maffei does not have an antisocial personality disorder. People who have antisocial personality disorders are less likely to respond to treatment, and Mr. Maffei does not meet criteria for this diagnosis.*

*3. During his current incarceration, Mr. Maffei has been taking an antidepressant, Prozac (fluoxetine) for the first time. Mr. Maffei reports that his depression has remitted with this treatment. Successful treatment of depression would help improve Mr. Maffei's social and occupational functioning, and to make him less likely to reoffend.*

*4. Mr. Maffei's history of viewing child pornography, and his offenses in Delaware, meet criteria for the diagnosis of Pedophilia, non-exclusive type. His preference was for female children. Offenders who prefer to view male child pornography have a higher rate of reoffending.*

*5. Mr. Maffei has a history of romantic and sexual relationships with ageappropriate, adult females. This history increases Mr. Maffei's potential for responding to sex offender-specific treatment and reduces his risk of reoffending.*

*6. Mr. Maffei is currently 42-years old. The risk of sexual reoffending decreases with age, particularly during the fourth and fifth decades of life.*

*7. Mr. Maffei has an alleged history of sexual contact with one female child who was known to him. Individuals who have a history of contact with victims who are unknown to them, and/or with multiple victims, have a higher risk of recidivism than those who do not have that history.*

*8. Mr. Maffei would benefit from substance abuse treatment. Refraining from use of marijuana, as well as other substances, would reduce Mr. Maffei's risk of reoffending. Mr. Maffei's abstinence from drugs could be monitored with random drug screening once he is released from prison and he is on probation.*

*9. Mr. Maffei has at least average intelligence. He has sufficient intellectual capacity to benefit from sexual offender-specific treatment.*

*[10]. Mr. Maffei does not have a psychotic disorder that would interfere with his ability to benefit from treatment.*

*[11]. Mr. Maffei recognizes and acknowledges that his behavior related to the current charges was wrong and unlawful.*

*[12]. Mr. Maffei is motivated not to reoffend.*

*[13]. Mr. Maffei did not have any sexual offender treatment prior to his arrest for the current charges and, therefore, has never failed to benefit from such treatment.*

*[14]. The only sexual offender treatment that Mr. Maffei has received to date was group counseling, which he reports he completed at the George W. Hill*

*Correctional Institution after he was arrested for the current charges.  (Mr. Maffei was at the George W. Hill in Delaware County, Pennsylvania prior to his transfer to the Philadelphia Federal Detention Center).  Mr. Maffei does not have any history of failing to comply with or benefit from treatment. [15]. Mr. Maffei could benefit from additional sexual offender-specific treatment, which would reduce his risk of reoffending."* (Exhibit D-1)

VI.    **REQUESTED SENTENCE**

1.    **Given the Nature and Circumstances of Ms. Maffei' Offense, His History and Characteristics, the Offense Level Requested Is Sufficient, But Not Greater Than Necessary, to Satisfy the Purposes of Sentencing.**

In enacting the Sentencing Reform Act, Congress did "not favor" one purpose of sentencing over another," except that rehabilitation was not to be a reason to impose a sentence of incarceration. *See* S. Rep. No. 98-225, at 67 (1983). Rather, "each of the four stated purposes should be considered in imposing sentence in a particular case," and "one purpose of sentencing may have more bearing on the imposition of sentence in a particular case than another purpose has." *Id*. at 68. In choosing what kind of sentence to impose, the court "must consider" all of the purposes and factors set forth in § 3553(a). *Id*. at 119. "Whether [imprisonment] should be imposed when authorized is a question to be resolved after balancing all the relevant considerations." *Id*.; *see also United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007) ("often one or two [purposes] prevail, while others pale").

Here, all of the purposes of sentencing point in the same direction. Mr. Maffei' offense is less serious than the offenses Congress had in mind and Mr. Maffei is not the dangerous offender Congress envisioned.  While Mr. Maffei acknowledges that his actions were hurtful and some

incarceration is necessary to protect the public, the sentence sought after by the government would be particularly harsh punishment for Mr. Maffei who, while young, has engaged in a peaceful and law abiding life up until the point of these singular offenses. Mr. Maffei' age, family circumstances, education and employment history point to a very low risk of reoffending.

### 2. JUST PUNISHMENT

U.S. v. Jones 460 F.3d 191 (2nd Cir. 2006) (where defendant convicted of felon in possession of firearm and guidelines were 36 months, district court properly imposed non guideline sentence of 15 months when he considered his own sense of what was fair and just. "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness.")

Rates of incarceration is another important factor to consider in just punishment. The insufferable nature of mass incarceration that ignores the availability and advantages of alternative sentences, whether or not a defendant is sentenced within or below a guideline range, cannot stand for much longer.

For Mr. Maffei, his early acceptance of responsibility, and his lack of any prior record – should spur this court to update its view and implementation of more modern approaches to federal sentencing of first time offenders that is consistent with some parts of the original 1994 Crime Bill and it's subsequent modifications; that is greater utilization of alternative sentences.

As such, just punishment is now determined to be a guideline offense level (the high water mark of any sentence before you even get to the §3553A factors) below a mandatory minimum level.

In looking at the just punishment provision of the guidelines, Mr. Maffei' truthful and timely proffer are all part of the same course of conduct. This renders Mr. Maffei' safety valve U.S.S.G. guideline reductions to be the high-water mark of the sentencing guideline calculation. Unempirical and unscientific based USSG offense levels still arbitrarily set high base level offense calculations. A sentence still below the guideline range, is clearly viable, appropriate, and properly placed.

### 3. ABERRANT BEHAVIOR

This offense is completely uncharacteristic of Mr. Maffei when viewed in context of his entire productive adult life. This court should vary in its application of the guidelines based upon the aberrant nature of his conduct. *U.S. v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (variance based on "isolated mistake" in otherwise long and entirely upstanding life); *U.S. v. Hadash*, 408 F.3d 1080, 1084 (8th Cir 2005) (defendant was a law abiding citizen who did incredibly dumb thing"). In this case his actions were hurtful and did great harm to a child and her family.

The Court may consider the factual basis of an aberrant behavior departure in reviewing the §3553 factors. As such, a discussion of the relevant factors that satiate a §5K2.2 aberrant behavior departure is relevant. The applicable notes to Section 5K2.2, other circumstances to consider, states "in determining whether the Court should depart under this policy statement, the Court may consider the defendant's:

    a.  mental and emotional conditions;

    b.  employment record;

c.  record of prior good works;

d.  motivation for committing the offense; and

e.  efforts to mitigate the effect of the offense.

### 4.  NEED FOR ADEQUATE DETERRANCE, 18 U.S.C. § 3553(a)(2)(B)

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time

frame").

*The Sentencing Commission has found that "[t]here is no correlation between recidivism and Guidelines' offense level. . . . The Guidelines' offense level is not intended or designed to predict recidivism."* U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004) ["U.S. Sent'g Comm'n, *Measuring Recidivism*"]. *See also* Part IV.A.3, *infra*. And according to "the best available evidence, . . . *prisons do not reduce recidivism more than noncustodial sanctions."* Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

### 5.  NEED FOR INCARCERATION, 18 U.S.C. § 3553(a)(2)(C)

Indeed, Mr. Maffei' history and characteristics make him a very low risk to re-offend. According to the Commission, *recidivism rates in general (defined to include technical supervised release violations) "decline relatively consistently as age increases," from 35.5% for offenders under age 21, down to 12.7% for offenders age 41 to 50, and down to 9.5% for offenders over age 50.* U.S. Sent'g Comm'n, *Measuring Recidivism* at 12 & Exh.9. "The only factors found relevant to <u>sentencing</u> decisions that also affected the likelihood of recidivism were age and marriage. The finding that age reduced the likelihood of committing subsequent offenses is consistent with the body of research that finds that offenders 'age out' of crime.

In short, Mr. Maffei age, education, and gainful employment, strongly support the conclusion that he is most unlikely to re-offend. The sentence should reflect the fact that Congress's contrary assumption is unfounded in this case. All of the evidence indicates that Mr. Maffei will never commit such an act again. Limited incarceration with supervised release

including appropriate conditions is more than sufficient to ensure that he never does.

### 6.  THE REQUESTED SENTENCE AVOIDS UNWARRANTED DISPARITIES AND UNWARRANTED SIMILARITIES

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing."  U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004).

As shown above, the Guideline calculation gives heavy weight to factors based on assumptions about the seriousness of the offense and general deterrence that are unfounded in general and particularly in this case. The Guideline range fails to take into account any of Mr. Maffei' characteristics demonstrating that there is no need to imprison him to protect the public and that treatment and rehabilitation will be achieved in the most effective manner in the community.  In this case, a variance to the mandatory minimum is necessary to avoid unwarranted uniformity between Mr. Maffei and dissimilar defendants who committed dissimilar conduct. *See Gall*, 552 U.S. at 55 (in imposing a sentence of probation, district court appropriately "avoid[ed] unwarranted similarities").

## 7. THE SENTENCE REQUESTED MEETS THE PURPOSES OF SENTENCING UNDER THE CIRCUMSTANCES IN THIS CASE AND IS CONSISTENT WITH THIRD CIRCUIT LAW

This Court is required to consider "the kinds of sentences available" by statute. 18 U.S.C. § 3553(a)(3).  Congress has provided for a range of sentences, from a term of probation of one to five years to 10 years' imprisonment, and if a term of imprisonment is imposed, has authorized a term of supervised release.  "Congress thus not only envisioned, but accepted, the possibility that some defendants found guilty of that subsection of the statute would receive no jail time at all." *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (upholding sentence of one day in prison followed by three years' supervised release where statutory range for drug trafficking was 0-20 years).

## 8. THE GUIDELINE RANGE IS UNREASONABLE AND IRRATIONAL WITH NO EMPIRICALBASIS

In the time since the Guidelines were first promulgated, the offense level applicable for a typical defendant charged with a federal crime, the applicable range has risen substantially.  Most of this massive increase was mandated by Congress. Many enhancements, and cases discussing such because under other criminal sentencing cases, were mandated by Congress.  However, this Court is able to refute Congress's reasons, whether "empirical" or "value judgments," "in terms that are persuasive on policy grounds."  *U.S. v. Bistline*, 665 F.3d 758, 763- 764 (6th Cir. 2012). With respect to enhancements adopted by the Commission without a congressional mandate *and* without empirical grounds, the Guideline is vulnerable precisely on that ground.  *Id.* at 764.

Guidelines, which were not directly mandated by Congress but which the Commission based on congressional policy, and refuted Congress's reasons for its policy. Likewise, Congress, in dictating much of the content of § 2G2.2, relied on "assumptions . . . that more recent research and data no longer support." 552 U.S. at 97. In other respects, the Commission adopted enhancements without a congressional mandate and without empirical grounds. For these reasons as well, the court should vary downward and sentence Mr. Maffei to a mitigated below guideline sentence.

U.S. v. Johnson 588 F.Supp.2d 997 (S.D. Iowa 2008) *(Case with guidelines 121-151 months, court imposes sentence of 84 months in part because the Sentencing Commission's increase in the offense level for child porn. crimes "do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses." Thus, "because the guidelines at issue in this case do not reflect the unique institutional strengths of the Sentencing Commission in that they are not based on study, empirical research, and data, this Court, as it did in United States v. Shipley, "affords them less deference than it would to empirically-grounded guidelines." 560 F. Supp. 2d 739, 745-46 (S.D. Iowa 2008);* see also *Kimbrough*, 128 S. Ct. at 574 (noting that guideline ranges created when the Commission departed from past practices are a less reliable appraisal of a fair sentence").

U.S. v. Hanson  561 F.Supp.2d 1004 (E.D. Wisc. 2008) (in possession of child porn. case where guidelines 210-262 months, court imposes sentence of 72 months in part because range is "far greater than necessary" to achieve purposes of sentencing.

**9. GUIDELINE ENHANCEMENTS ARE UNJUST**

U.S. v. Hanson  561 F.Supp.2d 1004 (E.D. Wisc. 2008) (Guidelines of 210-262 months, court imposes sentence of 72 months in part because "the enhancements for use of computer and images containing children under age twelve are typical of this crime.  Furthermore, given the unfortunate ease of access to this type of material in the computer age, compiling a collection with hundreds of images is all too easy, yet carries a 5 level enhancement, which in this case nearly doubled range."  Further, the guideline "carries a 5 level enhancement for trading images for a 'thing of value,"  yet "this case in no way involved commercial activity or profit...yet the guide imposed on defendant the same degree of enhancement as may be imposed on a commercial peddler."

## 10. MINIMAL OR NO CRIMINAL RECORD JUSTIFIES BELOW GUIDELINE SENTENCING

U.S. v. Autery  555 F.3d 864 (9th Cir. 2009) (where defendant convicted of possession of child pornography and where guidelines 41-51 months, court's sua sponte variance to probation not unreasonable in part because defendant's first conviction and Criminal History Level I "did not fully account or his complete lack of criminal history" because defendant with minor criminal history still falls in cat. I ); U.S. v. Huckins  (10th Cir. 2008) 529 F.3d 1312 (where defendant convicted of possession of child porn and guidelines 78-97 months, court's variance to 24 months proper in part because this was  defendant's first conviction --rejecting government's argument that guidelines already considered this by placing defendant in Crim. Cat. I. "although the Guidelines discourage granting a downward departure based upon criminal history when the defendant has been placed in a criminal history category of  I, this is a not a departure case, it is a variance case, a factor's disfavor by the Guidelines no longer excludes it from consideration under § 3553(a). ***Therefore, a district court may weigh a defendant's lack of***

*a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis.")*; see   USSC's own research suggesting that proper application of 3553(a) in the case of a "true" first offender now strongly supports a below-guideline variance because of 3553(a)(2)(C) and in 3553(a)(6).

*Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points.  Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of all.");*  US v. Duane*, 533 F.3d 441 (6th Cir. 2008)*  ([T]he district court did not respond to Duane's first argument — that he deserved a more lenient sentence because he had zero criminal history points.  This was not a particularly strong argument given that Duane's criminal history category was taken into account in determining his Guidelines range.  But the argument was not completely frivolous.  Because Duane had zero points at age 57, he might plausibly argue that even category I — which applies when a defendant has zero or one criminal history point(s) — overstated his criminal history to some degree.

Mr. Maffei has no juvenile adjudications. He has no criminal arrests or convictions. He has zero contact with law enforcement. He has led a (42) year life without crime. He should not be placed within the mathematical equation along other persons who have prior convictions.

### 11. STIGMA OF FELONY CONVICTION AND RUIN OF REPUTATION

U.S. v. Smith  683 F.2d 1236, 1240 (9th Cir.  1982) ("The stigma of a felony conviction is permanent and pervasive."); *see*  Wayne A. Logan "Informal Collateral Consequences" 88 Washington

Law Review 1103 (2013) ("Today, convict status serves as a perpetual badge of infamy, even serving to impugn reputation beyond the grave.")

U.S. v. Stone,  374 F.Supp.2d 983  (D.N.M. 2005) (where D pled guilty to aggravated sex abuse and guidelines 78-97 months and where guidelines *prohibit downward departure*, court still accepts Rule 11(c) agreement of 60 months  because "since this incident...Boeing has terminated Stone's employment and Stone's wife has divorced him. Stone has suffered a lot as a result of his crime [and] the deviation is [only] eighteen months less than the Guideline sentence. The Court concludes that a sixty month term of incarceration, coupled with Stone's personal losses, reflects the seriousness of his offense, promotes respect for the law, and provides just punishment.").

Maffei has suffered the loss of family, friends and work companions. He has lost his former employment. He carries the heavy burden of his offenses, around his neck, for the rest of his life.

## 12. DEFENDANT SUFFERED EXTRAORDINARY EMOTIONAL AND SEXUAL ABUSE AS A CHILD

*:*      U.S.  v. Ayers, 971 F.Supp. 1197 (N.D. Ill. 1997) (departure granted based upon cruel childhood with relentless physical, sexual and psychological abuse over course of years); U.S. v. Hubbard, 369 F.Supp.2d 146 (D. Mass 2005) (imposing 108 months instead of 188-235 career offender range because of diminished capacity from childhood trauma including sexual molestation of defendant and death of siblings in fire).

U.S. v. Floyd, 945 F.2d 1096 (9th Cir. 1991) (in drug case, court affirms departure from guideline range of 30 years to life to 17 years because of defendant's abandonment by his parents

and lack of guidance as a youth –rendering defendant less culpable. Also observing that "a criminal sentence must reflect an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime").  Note: the Guidelines eliminated this ground in §5K2.0 (d)(1),  but *Booker* has given it new life.); Landrigan v. Schriro  441 F.3d 638, 648 (9th Cir. 2006) ("Where a defendant's crime is attributable to a disadvantaged background or emotional or mental problems the defendant is less culpable than one without the excuse.")

In this case, the abandonment by his father in Mr. Maffei's tender years, repeated sexual assaults by his male cousin, treatment for depression, all while entering puberty evidences the fact that Mr. Maffei suffered significantly as a child. The wounds from his constant mistreatment as a child never healed properly and eventually became scars, far more difficult to treat. He was never given the opportunity to heal himself.

The Psychiatric Opinion letter (Exhibit D-3) spells out in detail the emotional and sexual abuse suffered by Mr. Maffei during his tender years. These wounds never healed, and through human nature and the need to survive, simply disguised.

## 13. MR. MAFFEI IS UNLIKELY TO REOFFEND DUE TO HIS AGE AND OTHER FACTORS

*U. S. v. Berry*, 565 F.3d 332, 341 (6th Cir. 2009); ("observers of the criminal justice system have long acknowledged the "key" argument "that elderly offenders pose so low a risk to the public that long or otherwise harsh sentences have little to no utilitarian benefit.")

The likelihood that Mr. Maffei "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." Pepper v. U.S. 131 S.Ct. 1229, 1242 (2011); U.S. v. D.M, (E.D.N.Y  May 1, 2013) (where defendant 22 years of age pled guilty to possession of child porn, and guidelines 78-97 months, sentence of probation appropriate in part because little likelihood he would engage in future criminal conduct)

Due to the mandatory minimums in this matter, there is little doubt that Mr. Maffei will have spent a significant amount of his remaining life in Federal prison.

## 14. DEFENDANT SHOWED EXTREME REMORSE

U.S. v. Stall  581 F.3d 276  (6th Cir.  2009) (in child pornography case where guidelines 57-65 months, court's sentence of 1 day in jail, 10 years supervised release, and one year house arrest, not unreasonable in part because of defendant's " exceptional expression of remorse [at the time of his arrest and thereafter], immediate cooperation with the investigation, commitment to counseling, and demonstrated promise for rehabilitation."

Mr. Maffei provided an immediate inculpatory confession to the police. He gave them all passcodes for his computer, phone and any other information they requested. Mr. Maffei gave his full cooperation and took responsibility for his actions and in so doing, showed his great remorse over his actions.

## 15. COOPERATION WITH AUTHORITIES

U.S. v. Ruff,  535 F.3d 999  (9th Cir. 2008) ( where defendant pled guilty to embezzling 650,000 from non-profit organization over course of three years, and where guidelines 30-37 months, sentence of one day in jail and supervised release for three years on condition defendant

spend one year in community treatment center to go to work and obtain counseling—not unreasonable in part because his cooperation with the agents as to how crime accomplished).

Mr. Maffei provided an immediate inculpatory confession to the police. He gave them all passcodes for his computer, phone and any other information they requested. Mr. Maffei gave his full cooperation and took responsibility for his actions.

## VI. SUMMARY

The advisory guidelines are far greater than necessary, not empirically based, and are too harsh. Even the previous chief law enforcement officer of the United States (Holder) believes that too many people are incarcerated for far too long. Too harsh a sentence does not promote justice or respect for law, but rather the opposite and that the court should free itself from "guidelineitis. The sentence must be just, and that mercy and compassion are a part of justice.

*"Sentencing is a difficult art [and it] is easy to make it mechanical. It is impossible to make it scientific in the sense of a hypothesis validated or invalidated by experiment. It is, however, an act of reason as the judge looking at this particular person and the circumstances of the crime that this particular person has committed makes a judgment following the prescriptions of the statute." U.S. v. Diaz-Argueta  447 F.3d 1167 (9th Cir. 2006)*.  In other words, "fashioning a just sentence cannot be reduced to a mere arithmetical exercise [and that] reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produces an illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of *judgment*." U.S. v. Biheiri, 356 F.Supp. 2d 589  (E.D.Va. 2005).

28 | P a g e

Consider that the possibility of rehabilitation has returned as a forceful mitigating factor because it is a goal of punishment. 18 U.S.C. § 3553(a)(2)(D). That goal "cannot be served if a defendant can look forward to nothing beyond imprisonment. A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment." U.S. v. Carvajal, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) (unpub.) (emphasis added).

VII.    **CONCLUSION**

For the reasons stated, Mr. Maffei respectfully requests that this Court sentence him to a below guidelines sentence of not more than the mandatory minimum sentencing as granted by the Court.

Respectfully submitted,

/s/ Steven F. O'Meara

STEVEN F. O'MEARA, Esquire
Attorney for Matthew Maffei

**Date:    January 8, 2017**